IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RADSHEEN W. SHEPHERD, ) | |
| No. R-12862, ) | |
|       Petitioner, ) | |
| ) | |
| vs. ) | Case No. 17-cv-00116-MJR |
| ) | |
| WEXFORD HEALTH SOURCES, INC., ) | |
| MICHAEL D. SCOTT, ) | |
| VIPIN SHAH, ) | |
| PAUL LOUIS SHICKER, ) | |
| CHRISTINE BROWN, ) | |
| JACQUELINE LASHBROOK, ) | |
| UNKNOWN PARTY(Jane Doe and John ) | |
| Doe Doctors/Nurses at Vienna and ) | |
| Pinckneyville), and ) | |
| IDOC ) | |
|       Defendants. | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Radsheen W. Shepherd, an inmate in Pinckneyville Correctional Center ("Pinckneyville"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983.[1]  Plaintiff contends officials at Vienna Correctional Center ("Vienna") (where Plaintiff was formerly incarcerated) and Pinckneyville have denied Plaintiff treatment for his hernia by refusing to approve surgical repair for the same.  Plaintiff further contends his requests for surgical treatment are being denied as part of a policy or procedure implemented by Wexford and IDOC intended to save money.  In connection with these claims, Plaintiff sues Wexford

---

[1] Plaintiff's initial filing (Doc. 1, 1-1) was unsigned.  Accordingly, the Court directed Plaintiff to submit a signed complaint.  (Doc. 7).  Plaintiff complied with the Court's directive by filing a signed Complaint on February 22, 2017.  (Doc. 8, 8-1).  As such, the operative Complaint in the instant action is the pleading filed on February 22, 2017.

1

Health Sources, Inc., (corporate healthcare provider), Michael D. Scott (Pinckneyville physician), Vipin Shah (Pinckneyville physician), Paul Louis Shicker (IDOC medical director), Christine Brown (Wexford health care administrator), Jacqueline Lashbrook (former Pinckneyville warden), IDOC, and numerous unknown nurses and doctors ("Jane Doe and John Doe Doctors/Nurses at Vienna and Pinckneyville").

According to the Complaint, Plaintiff sues all Defendants in their individual capacities. Plaintiff seeks monetary damages, declaratory relief, and any other relief deemed appropriate. (Doc. 8-1, p. 9). Plaintiff's Complaint does not expressly seek injunctive relief. However, on March 6, 2017, Plaintiff filed a pleading titled "Closing Statements." (Doc. 14). This pleading reiterates facts alleged in the Complaint and asks the Court to order Pinckneyville to surgically repair his hernia. *Id.* Plaintiff is advised that the Court does not accept piecemeal pleadings. Plaintiff's Complaint must stand on its own. Accordingly, Plaintiff's "Closing Statements" pleading shall be stricken. Nonetheless, considering the facts alleged in the Complaint, specifically Plaintiff's repeated claims that his hernia requires surgical repair, the Court construes Plaintiff's Complaint as including a request for injunctive relief at the close of the case.

Plaintiff has also filed a Motion for a Temporary Restraining Order and/or Preliminary Injunction. (Doc. 16). As is discussed more fully below, the Motion for a Temporary Restraining Order shall be **DENIED** without prejudice. The Motion for a Preliminary Injunction shall be referred to the Magistrate Judge for review as soon as practicable.

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

## The Complaint

Plaintiff suffers from an inguinal hernia that causes constant excruciating pain. (Doc. 8, pp. 3-4). The hernia is located in Plaintiff's pubic region. (Doc. 8-1, p. 5). Plaintiff's hernia is large and constantly causes sharp pains that interfere with Plaintiff's sleep, urination, bowel movements, and lifting "regular" objects. (Doc. 8-1, pp. 5-6). Plaintiff contends his condition is worsening and his pain is increasing. (Doc. 8-1, p. 5).

Plaintiff generally alleges that, for more than 3 years, doctors at Vienna and Pinckneyville have denied Plaintiff's repeated requests for surgical treatment. (Doc. 8-1, pp. 3-4). Rather than allowing Plaintiff's hernia to be surgically repaired, Defendants have prescribed mild/ineffective pain medication and ill-fitting/ineffective hernia belts. (Doc. 8-1, p. 4; Doc. 8, p. 4). Additionally, Defendants have recommended that Plaintiff exercise and lose weight and, at times, have authorized Plaintiff to utilize a low bunk/low gallery permit. Plaintiff contends surgical treatment has been denied in furtherance of a policy implemented by Wexford and/or IDOC intended to save money. (Doc. 8-1, pp. 3-4). Plaintiff alleges several Defendants have informed him that IDOC does not surgically treat hernias because it is too expensive and Plaintiff will have to wait until he is released from IDOC custody, in August 2017, to have surgery. (Doc. 8, p. 4).

As to each Defendant, Plaintiff brings the following specific allegations:

**Unknown Party (Jane Doe and John Doe Doctors/Nurses at Vienna and Pinckneyville)**

Between March 6, 2015 and April 14, 2015, while incarcerated at Vienna, Plaintiff was examined by various unknown nurses and doctors.[2] During these visits, Plaintiff's hernia was measured at 12.5 centimeters. (Doc. 8-1, p. 10). According to the Complaint, each nurse or doctor provided inadequate medical treatment (mild pain medication and/or a hernia belt that was the wrong type/size) and indicated that Plaintiff would never be approved for surgical repair. *Id.* Instead, Defendants indicated Plaintiff would have to pursue surgery after he is released from IDOC custody. *Id.*

---

[2] Plaintiff specifically discusses visits with Jane Doe and John Doe nurses and doctors occurring on March 6, 2015 (Doc. 8-1, p. 10); March 12, 2015 (Doc. 8-1, p. 10); March 26, 2015 (Doc. 8-1, p. 10); and April 14, 2015 (Doc. 8-1, p. 11).

Between December 28, 2015 and June 18, 2016, while incarcerated at Pinckneyville, Plaintiff was examined by various unknown nurses and doctors.[3] During these visits, Plaintiff's hernia was examined. (Doc. 8-1, pp. 12 -14). Additionally, Plaintiff was measured for and received a hernia belt. (Doc. 8-1, pp. 13-14). On May 9, 2009, an unknown nurse informed Plaintiff that his hernia belt was not working. During a medical visit on December 28, 2015, an unknown nurse observed that Plaintiff's hernia was getting larger. (Doc. 8-1, p. 12). Plaintiff inquired about surgery and was told that IDOC will not operate on any hernia. *Id.*

**Vipin Shah**

While incarcerated at Pinckneyville, Shah examined the Plaintiff on at least two occasions (May 15, 2015 (Doc. 8-1 p. 11) and August 3, 2015 (Doc. 8-1, p. 12)). During these visits, Plaintiff relayed complaints regarding his hernia and severe pain. (Doc. 8-1, pp. 11-12). Shah issued a low bunk permit and directed Plaintiff to lose weight and drink more water. *Id.* Shah also indicated that IDOC does not provide surgical repair for hernias and does not care about Plaintiff's pain. *Id.* Shah told Plaintiff the only way he will receive surgery is when he is released from IDOC. *Id.*

**Michael D. Scott**

While incarcerated at Pinckneyville, Scott examined Plaintiff on several occasions (January 29, 2016 (Doc. 8-1, p. 12), May 12, 2016 (Doc. 8-1, p. 14), June 7, 2016 (Doc. 8-1, p. 15), June 24, 2016 (Doc. 8-1, p. 16), June 27, 2016 (Doc. 8-1, pp. 16-17)). During these visits, Plaintiff complained about his hernia and repeatedly requested surgical treatment. (Doc. 8-1, pp. 12-16). During one visit, Plaintiff complained that his hernia would not go back inside. (Doc. 8-

---

[3] Plaintiff specifically discusses visits with Jane Doe and John Doe nurses and doctors occurring on December 28, 2015 (Doc. 8-1, p. 12), January 22, 2016 (Doc. 8-1, pp. 12-13), May 9, 2016 (Doc. 8-1, p. 13), June 3, 2016 (Doc. 8-1, p. 14), and June 18, 2016 (Doc. 8-1, p. 14).

5

1, p. 16). Scott indicated that IDOC would never approve surgical treatment and that the only treatment available was mild pain medication and a hernia belt. (Doc. 8-1, pp. 12-16). The pain medication was inadequate and the hernia belt Plaintiff received was inadequate because it was the wrong size and type. (Doc. 8-1, p. 5). On or about June 27, 2016, Scott informed Plaintiff that his request for surgical repair had been formally denied. (Doc. 8-1, p. 16). When Plaintiff asked why the surgery was denied, Scott said: "Because of the State budget IDOC will not give you hernia surgery. Like I told you before, you will have to wait until 2017, when you go home." (Doc. 8-1, pp. 16-17).

**Jacqueline Lashbrook**

On or about November 11, 2016, while incarcerated at Pinckneyville, Plaintiff wrote an offender request letter to Lashbrook. (Doc. 8-1, p. 22). In the letter, Plaintiff relayed complaints about his hernia and lack of treatment related to the same. *Id.* Plaintiff also asked to be seen by an outside specialist, alleged that IDOC and Wexford were implementing an inappropriate treatment policy with regard to hernias, and requested a personal interview with Lashbrook. *Id.*[4]

**Wexford and IDOC**

Wexford and IDOC have implemented a policy prohibiting the surgical repair of hernias. (Doc. 8-1, pp. 3-6, 12, 16-17). The policy is premised solely on cost considerations. *Id.*

**Michael D. Scott and Christine Brown**

Plaintiff does not state any specific allegations, indicating that Scott or Brown were personally involved in the alleged constitutional violations.

---

[4] Plaintiff alleges the same with regard to an offender request letter he sent to Karen Jaimet. At the time, Jaimet was the Assistant Warden of Pinckneyville. Presently, Jaimet is the Acting Warden of Pinckneyville. Plaintiff has not named Jaimet as a defendant in this action. Accordingly, Plaintiff has not stated a claim as to Jaimet.

**Discussion**

Based on the allegations of the Complaint and Plaintiff's articulation of his claims, the Court finds it convenient to divide the *pro se* action into a single count. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.

**COUNT 1**- Defendants responded to Plaintiff's serious medical need (inguinal hernia and associated pain) with deliberate indifference, in violation of the Eighth Amendment.

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of this count does not constitute an opinion as to its merit.

Count 1 shall receive further review against Scott, Shah, Lashbrook, Wexford, and the Unknown Party (Jane Doe and John Doe Doctors/Nurses at Vienna and Pinckneyville). The Eighth Amendment "safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *See Perez v. Fenoglio*, 792 F.3d at 768, 776 (7th Cir. 2015) (citing *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). To state an Eighth Amendment claim in this context, a plaintiff must allege an objectively serious medical condition and an official's deliberate indifference to that condition. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

A serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005). Plaintiff's inguinal hernia satisfies the objective component of this claim at screening. *See King v. Kramer*, 680 F.3d 1013

(7th Cir. 2012) (hernia is considered a serious medical condition); *Gonzalez v. Feinerman*, 663 F.3d 311 (7th Cir. 2011) (unincarcerated hernia may be considered serious medical condition).

Deliberate indifference occurs when a defendant realizes that a substantial risk of harm to a prisoner exists, but disregards the known risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In the context of an untreated and painful hernia, the Seventh Circuit has specifically noted that a "[d]elay in treating a condition that is painful even if not life-threatening may well constitute deliberate indifference." *Gonzalez*, 663 F.3d at 315. In addition, the "deliberate refusal to treat treatable pain can rise to the level of an Eighth Amendment violation." *Brown v. Darnold*, 505 F. App'x. 584 (7th Cir. 2013) (citing *Gil v. Reed*, 381 F.3d 649, 661-62 (7th Cir. 2004)).

The allegations in the Complaint suggest that Shah, Scott, and the Unknown Party (Jane Doe and John Doe Doctors/Nurses at Vienna and Pinckneyville) may have responded to Plaintiff's hernia and related pain with deliberate indifference, when they failed to adequately treat his pain, prescribed hernia belts of the wrong size and type, and/or denied surgical treatment.

The allegations in the Complaint also suggest that the deliberate indifference standard is satisfied with respect to Wexford, a private corporation that contracts with IDOC to provide medical services to prisoners in Illinois. A private corporation that contracts to provide essential government services cannot be liable under § 1983, unless the constitutional violation "was caused by an unconstitutional policy or custom of the corporation itself." *Shields v. Illinois Dep't of Corr.*, 746 F.3d 789 (7th Cir. 2014). The doctrine of *respondeat superior* (supervisory liability) is not recognized under § 1983. *Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008).

Plaintiff alleges Wexford refused to authorize the medical procedure necessary to treat his hernia because of cost concerns. Shah, Scott, and the unidentified nurses and doctors

8

allegedly acted pursuant to this policy when denying Plaintiff's requests for treatment. Because this policy could foreseeably delay proper medical care and result in unnecessary pain, the claim against Wexford shall receive further review. *See Perez*, 792 F.3d at 781-82 (reversing dismissal of claim against Wexford where its policy of having no full-time doctor stationed at prison delayed proper medical care of prisoner).

The allegations in the Complaint are also sufficient to proceed as to Lashbrook. In the context of deliberate indifference to medical needs, individual liability may arise on behalf of a non-medical defendant, if the defendant is made aware of a specific constitutional violation via correspondence from the inmate and the individual declines to take any action to address the situation. *See Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015). Simply put, a prison official may not escape liability by turning a blind eye to serious harms. *Id*. at 781 ("deliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or 'turns a blind eye' to it"). Here, Plaintiff alleges he submitted correspondence to Lashbrook regarding his hernia and his need for medical intervention. Under the circumstances, the Court cannot, at this time, dismiss Count 1 as to Lashbrook.

Count 1 shall be dismissed as to IDOC, Brown, and Shicker. Plaintiff cannot maintain a claim for money damages against IDOC, because it is a state government agency. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under [Section] 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment). Accordingly, Count 1 shall be dismissed with prejudice as to IDOC.

9

As to Brown and Shicker, Count 1 shall be dismissed without prejudice. Brown and Shicker are identified as defendants in the caption of Plaintiff's Complaint and in his list of defendants. However, Plaintiff fails to bring any specific allegations indicating that either Defendant was personally involved in the alleged constitutional deprivations. Accordingly, Brown and Shicker shall be dismissed from the action without prejudice. *See Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus liability does not attach unless the individual defendant caused or participated in a constitutional violation."); *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").[5]

### Identification of Unknown Defendants

Plaintiff shall be allowed to proceed with Count 1 against the Unknown Party (Jane Doe and John Doe Doctors/Nurses at Vienna and Pinckneyville). However, these individuals must be identified with particularity before service of the Complaint can be made on them. Where a prisoner's complaint states specific allegations against individual prison staff members sufficient to raise a constitutional claim against the unknown defendants, the prisoner should have the opportunity to engage in limited discovery in order to ascertain the identity of those individuals. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009).

In this case, guidelines for discovery aimed at identifying Jane Doe and John Doe Doctors/Nurses at Vienna and Pinckneyville will be set by the United States Magistrate Judge, so that Plaintiff can identify these parties with particularity. All other Defendants shall promptly

---

[5] Furthermore, these Defendants are not subject to liability merely because of their status as supervisors. "The doctrine of *respondeat superior* does not apply to § 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.' " *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).

respond to discovery, formal or otherwise, aimed at identifying these individuals. Once identified, Plaintiff shall file a motion to substitute the unknown nurses and doctors referred to in the Complaint with the specific names of each Defendant throughout the pleading.

## Injunctive Relief

As noted above, the Court construes Plaintiff's Complaint as including a request for injunctive relief at the close of the case. Additionally, Plaintiff has filed a motion for interim injunctive relief. (Doc. 16). With respect to Plaintiff's requests for injunctive relief, the Clerk shall be directed to add the current Warden of Pinckneyville (Karen Jaimet, Acting Warden of Pinckneyville)[6] as a party Defendant, in her official capacity only. The Warden is included for the sole purpose of carrying out any injunctive relief to which Plaintiff might ultimately be entitled, should he prevail. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

## Pending Motions[7]

### Temporary Restraining Order and/or Preliminary Injunction

Plaintiff has filed a Motion for a Temporary Restraining Order and/or Preliminary Injunction in which he requests the Court to order Defendants to refer him to a qualified specialist for evaluation and for surgical treatment of his hernia. (Doc. 16).

There are significant differences between a TRO and a preliminary injunction. A TRO can be issued without notice to the party to be enjoined, but it may last no more than fourteen

---

[6] The Court notes that Jaimet is referenced in the body of Plaintiff's Complaint. Plaintiff alleges that he corresponded with Jaimet (at the time Jaimet was the assistant warden of Pinckneyville) regarding his hernia and his need for medical assistance. However, Jaimet is not identified as a defendant in this action. As such, the Complaint does not presently state a claim as to Jaimet in her personal capacity.

[7] Plaintiff's initial filing included four motions (Docs. 2-4). When Plaintiff submitted his signed Complaint, he resubmitted his pending motions (Docs. 9-12). The earlier filed motions (Docs. 2-4) shall be terminated from the Court's docket as duplicative.

days. FED. R. CIV. P. 65(b)(2). Further, a TRO may issue without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b)(1)(A). Such injunctive relief is warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

The Court deems it necessary to deny Plaintiff's request for a TRO at this time. It would not be appropriate, given the information presented, to enter an order for immediate surgery, without providing notice to Defendants and giving them an opportunity to respond. Accordingly, the **TRO** is **DENIED** without prejudice to Plaintiff renewing this request, should it become necessary to do so.

Plaintiff also seeks a preliminary injunction. In contrast to a TRO, a preliminary injunction is issued only after the adverse party is given notice and an opportunity to oppose the motion. FED. R. CIV. P. 65(a)(1). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). *See also Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999).

The Court finds that Plaintiff's request for preliminary injunctive relief warrants prompt consideration. Accordingly, Plaintiff's Motion for Preliminary Injunction (Doc. 16) shall be **REFERRED** to United States Magistrate Judge **Stephen C. Williams**, who shall resolve the request as soon as practicable.

**Additional Pending Motions**

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 10) and a Motion for Appointment of Counsel (Doc. 11).  These motions shall be **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for a decision.

Plaintiff has filed a Motion for Discovery.  (Doc. 15).  This motion shall be **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for a decision.

Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* (Doc. 9) shall be addressed in a separate Order of this Court.  However, for purposes of determining how service of process shall proceed, the Court observes that Plaintiff appears to qualify for pauper status.  Accordingly, service of summons and the Complaint will be effected at government expense.  *See* 28 U.S.C. § 1915(d).  In light of this, Plaintiff's Motion for Service of Process at Government Expense (Doc. 12) is **MOOT**.

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** is subject to further review as to **WEXFORD, SCOTT, SHAH, LASHBROOK,** and the **UNKNOWN PARTY (Jane Doe and John Doe Doctors/Nurses at Vienna and Pinckneyville)**.  **FURTHER**, **COUNT 1** is **DISMISSED WITHOUT PREJUDICE** as to **SHICKER** and **BROWN**.  **FURTHER, COUNT 1** is **DISMISSED WITH PREJUDICE** as to **IDOC**.

The Clerk is **DIRECTED** to terminate **SHICKER, BROWN,** and **IDOC** from the docket.

The Clerk is **DIRECTED** to add the current Warden of Pinckneyville (Karen Jaimet, Acting Warden of Pinckneyville) as a party Defendant in her official capacity only.

The Clerk is **DIRECTED** to strike Plaintiff's "Closing Statements" Pleading.  (Doc. 14).

**IT IS FURTHER ORDERED** that as to **COUNT 1** the Clerk of the Court shall prepare for **WEXFORD, SCOTT, SHAH, LASHBROOK,** and **JAIMET**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

No service shall be made on the unknown defendants until such time as Plaintiff has properly identified them in a Motion for Substitution of Parties.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for further pre-trial proceedings.  Further, this entire matter shall be **REFERRED** to Judge **Williams** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, even if his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will

cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: March 7, 2017**

s/ MICHAEL J. REAGAN
**Chief Judge**
**United States District Court**
